Filed 9/24/24  In re H.I. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re H.I. et al., Persons Coming Under the Juvenile Court Law. | D083615 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No.  J520911A–B) |
| v. | |
| H.I., Sr., | |
| Defendant and Appellant. | |

[Caption continues on next page.]

In re H.I., a Person Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,

    Plaintiff and Respondent,

    v.

E.S. et al.,

    Defendants and Appellants.

D083946

(Super. Ct. No. J520911A)

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Alexander M. Calero, Judge. Affirmed.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant H.I., Sr.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant E.S.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

H.I., Sr. (Father) and E.S. (Mother) appeal from the juvenile court's orders placing their sons, H.I. and Z.I., with the maternal grandmother (grandmother) and later terminating their parental rights. Father contends the court erred by (1) changing his sons' placement to grandmother, and

(2) declining to apply the parental-benefit exception to adoption.  (Welf. & Inst. Code,[1] § 366.26, subd. (c)(1)(B)(i).)  Mother joins Father's arguments regarding application of the parental-benefit exception to the extent it may inure to her benefit.  We find no error and affirm.[2]

FACTUAL AND PROCEDURAL BACKGROUND

At H.I.'s birth in April 2021, Mother disclosed domestic violence to hospital staff, the police, and a San Diego Health and Human Services Agency (Agency) social worker.  A hospital social worker stated Mother trembled and cried as she recounted the domestic violence.  Father claimed Mother's reports of domestic violence were "lies."  The Agency created a safety plan for Mother to stay with the grandmother out of state, but she returned to San Diego prior to the expiration of the safety plan.

In October 2021, the Agency received a referral reporting a domestic violence incident between the parents where Father hit Mother, causing her nose to bleed.  The following day, Mother denied any physical violence between herself and Father.  In November 2021, the Agency received another referral alleging domestic violence between the parents, including Father punching Mother's face and body multiple times, causing bystanders to intervene.  H.I. was present during the incident.  When law enforcement responded, Mother admitted she was afraid of Father but claimed he did not make physical contact with her.  Father stated he merely poked Mother in

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Although Father's notice of appeal is also directed to the placement order pertaining to Z.I., his opening brief contains no argument challenging this order as to Z.I. and we deem any issue regarding Z.I. forfeited.  (*In re P.L.* (2024) 100 Cal.App.5th 406, 409, fn. 4.)  We will refer to Z.I. as necessary to provide context.

the abdomen with his index and middle fingers. After Father's arrest, a criminal protective order (CPO) was issued for Mother. The social worker later learned Father returned to the home multiple times after the CPO issued.

In late November 2021, the Agency filed a petition alleging H.I. was at risk of serious physical harm due to the parents' ongoing domestic violence and repeated violations of the CPO. (§ 300, subd. (b)(1).) The juvenile court granted the Agency's request for a protective custody warrant. (§ 340, subd. (a).) In the detention report, the social worker noted grandmother's interest in placement and reported grandmother had guardianship of Mother's older daughter, A.S. However, because grandmother lived out of state, the Agency placed H.I. with a nonrelative caregiver (caregiver). At the detention hearing, the juvenile court found Father to be the presumed father, and prima facie evidence existed that H.I. was a person described by section 300, subdivision (b)(1). It detained H.I. in a licensed foster home and ordered supervised visitation for the parents.

In January 2022, Father was arrested after he hit Mother in the mouth during an argument. At the jurisdiction and disposition hearing in March 2022, the juvenile court found the allegations in the petition true, removed H.I. from his parents, ordered him to be placed in a licensed foster home, and directed the Agency to provide services to the parents. It ordered an Interstate Compact on the Placement of Children (ICPC) evaluation for grandmother and found the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) did not apply.[3] In August 2022, the social worker reported

---

[3] The parents previously appealed the court's jurisdiction and disposition findings related to ICWA. The Agency conceded error, and we conditionally reversed the jurisdiction and disposition orders and ordered the Agency to file

4

Father tested positive for marijuana, fentanyl, and norfentanyl (a fentanyl metabolite). In October 2022, Father's domestic violence program terminated him due to nonparticipation. Nonetheless, he visited H.I. weekly and acted appropriately during visits. In December 2022, the Agency increased Father's visitation to twice weekly. Mother last visited H.I. in March 2022. She did not participate in domestic violence counseling or parenting classes. Grandmother's ICPC was denied due to a lack of appropriate sleeping arrangements for H.I.

At the contested six-month review hearing in December 2022, the court terminated Mother's reunification services and ordered the Agency to continue Father's services. In January 2023, Mother gave birth to H.I.'s sibling, Z.I. Mother and Z.I. tested positive for fentanyl, methamphetamines, and suboxone (a medicine to treat opioid dependence). Z.I. suffered from severe withdrawal symptoms.

In February 2023, the Agency reported that Father was not in full compliance with any component of his case plan. He also tested positive for marijuana and norfentanyl. At the contested 12-month review hearing in March 2023, the juvenile court terminated Father's reunification services, ordered a new ICPC assessment for grandmother, and scheduled a section 366.26 hearing to address a permanent plan for H.I. In its section 366.26 report, the Agency noted grandmother and the caregiver were interested in adoption and informed the caregiver about grandmother's pending ICPC. Grandmother's ICPC was approved in July 2023. At a hearing in December 2023, the juvenile court authorized an extended visit for both

a report demonstrating its compliance with the inquiry provisions of ICWA. (*In re H.I.* (June 2, 2022, D080099) [nonpub. opn.] 2022 Cal.App.Unpub. LEXIS 3442, 2022 WL 1790285.) In March 2023, the juvenile court found the Agency conducted an adequate inquiry and ICWA did not apply.

children with grandmother and granted Father virtual visits. Later that month, a social worker transported the children out of state for their extended visit with grandmother.

At a contested placement hearing in early January 2024, the social worker reported H.I. was doing well in his grandmother's care. He was sleeping well after adjusting to the time change, and the social worker observed him to be happy and comfortable with his grandmother during video calls. The juvenile court found it was in the children's best interest to be placed with grandmother and ordered them placed with her. As to Z.I., the court continued the parents' reunification services to the 12-month hearing.

After multiple continuances, the contested section 366.26 hearing took place in early April 2024. The court considered the Agency's reports and heard testimony from the social worker and Father. The court found the parental-benefit exception to adoption did not apply to Mother because she failed to visit the children regularly. It found Father visited H.I. regularly but did not meet his burden to prove the second prong, that H.I. would benefit from continuing the relationship. Nonetheless, the court addressed the third prong and found the benefits of adoption outweighed any detriment to termination of Father's parental rights. The court terminated the parents' parental rights as to H.I.

### DISCUSSION

Father contends the juvenile court's order placing H.I. with grandmother must be reversed because the court improperly used the section 361.3 placement factors (the placement factors) as a guide to determine placement when the only factor it should have considered was H.I's best interests. He and Mother also assert the court erred when it declined to apply the parental-benefit exception to adoption. We reject these claims.

6

## I.

### *No Abuse of Discretion in Issuing the Placement Order*

Although the juvenile court found it was in H.I.'s best interest to be placed with grandmother, Father claims it reached this conclusion by improperly relying on the placement factors as a guide and prioritizing grandmother's placement request over H.I.'s need for continuity of placement. We are not persuaded by his arguments.

At the start of a dependency case, section 361.3, subdivision (a) mandates that the Agency and juvenile court provide "preferential consideration" to a relative's placement request. This means a relative requesting placement must be the first option to be evaluated and investigated. (*Amber G. v. Superior Court* (2022) 86 Cal.App.5th 465, 490.) When assessing a relative for placement, the Agency and court are required to consider the placement factors.[4] (§ 361.3, subd. (a).)

---

[4] These factors include, in pertinent part: "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement. [¶] . . . [¶] (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] (A) Provide a safe, secure, and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H) (i) Provide legal permanence for the

Where, as here, reunification efforts have ended, the preference afforded by section 361.3 no longer applies. (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 285.) Rather, as both parties recognize, when reunification efforts have ended, the question is whether a change of placement would be in the child's best interest. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 323 (*Stephanie M.*).) We examine the court's change of placement decision for an abuse of discretion. (*Id.* at p. 318.) When the facts allow for two or more reasonable inferences, as a reviewing court, we lack the power to replace the juvenile court's decision with our own. (*Id.* at p. 319.) And where substantial evidence supports an order, there is no abuse of discretion. (*In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 839.)[5]

Father first contends the juvenile court abused its discretion by considering the placement factors as to H.I., which he argues is the incorrect legal standard. We apply the de novo standard of review to Father's claim the court applied an incorrect legal standard. (*People v. Brunette* (2011) 194 Cal.App.4th 268, 276.) As a preliminary matter, we disagree with

---

child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe childcare, as necessary. [¶] (8) The safety of the relative's home." (§ 361.3, subd. (a).)

[5] Although subdivision (k) of section 366.26 creates a preference for adoption applications by a relative caretaker or a foster parent, this preference applies where the court has approved a permanent plan of adoption for the dependent child, or to a dependent child who has been freed for adoption. Here, at the time of the placement hearing, the court had not yet approved a permanent plan of adoption for H.I or freed H.I. for adoption. Rather, the court made these orders several months later at the contested section 366.26 hearing. Accordingly, by its plain terms section 366.26, subdivision (k) does not apply. In any event, although H.I.'s caretaker was interested in adoption if the parents did not reunify, the caretaker did not object to the change in placement.

8

Father's reading of the record. The juvenile court understood the placement factors applied to Z.I. because reunification services to the parents were ongoing but they did not apply to H.I. because reunification services had been terminated. It then applied the placement factors as to Z.I. and used them "as a guide" for H.I. Father cited no authority for the proposition a court errs or is barred from considering the placement factors as a guide after reunification services have been terminated, and we found no such authority.

Rather, a court " ' "should avail itself of all evidence which might bear on the child's best interest." ' " (*In re L.M.* (2019) 39 Cal.App.5th 898, 911.) Here, the court examined the placement factors as to H.I. before concluding it was in H.I.'s best interest to change placement to grandmother. This record gives us no basis to conclude the juvenile court applied an incorrect legal standard or otherwise abused its discretion by using the placement factors to guide its ultimate best interest decision as to H.I.

Father also argues the juvenile court abused its discretion by not giving adequate weight to H.I.'s placement with his caregiver and his need for continuity and stability, which is the foremost consideration at this stage in the proceedings. To the contrary, our review of the record shows the juvenile court's decision placing H.I. with his grandmother was well within its discretion.

The juvenile court considered the length of time H.I. had spent with the caregiver and noted H.I. had a connection with the caregiver and felt safe in her care. It recognized the length of time H.I. had been with his current caregiver weighed against placing him with grandmother. Nonetheless, it noted H.I. adapted well to his new environment and was "fitting in" with his new family. The court remarked that H.I.'s smooth transition to his grandmother's care diminished concerns about whether this placement was

9

in his best interest, despite the length of time with his caregiver.  The court observed H.I.'s placement with grandmother allowed him to stay with Z.I. and his half-sibling, A.S.  Additionally, this placement facilitated contact with other maternal family members who lived in the area.

In sum, the court considered all the information before it and concluded placing H.I. with grandmother would be in his best interest.  We cannot reweigh the evidence or substitute our judgment for that of the juvenile court. (*Stephanie M., supra*, 7 Cal.4th at p. 319.)  On this record, we reject Father's assertion that placing H.I. with his grandmother constituted an abuse of discretion.

## II.

### *The Juvenile Court Did Not Err in Finding*
### *the Parental-Benefit Exception Did Not Apply*

When the juvenile court finds by clear and convincing evidence a child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies. (§ 366.26, subd. (c)(1).)  One of the statutory exceptions is the parental-benefit exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)  A parent claiming the parental-benefit exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies.  (*In re Caden C.* (2021) 11 Cal.5th 614, 636–637 (*Caden C.*).)

To establish this exception, the parent must first show he or she had "regular visitation and contact with the child, taking into account the extent

10

of visitation permitted." (*Caden C., supra*, 11 Cal.5th at p. 636.) Second, the parent must show that "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Ibid.*) This element is affected by " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Id.* at p. 632.) In conducting this assessment, "courts often consider how children feel about, interact with, look to, or talk about their parents." (*Ibid.*) Third party witnesses, including psychologists, can provide relevant evidence about the parent/child bond. (*Id.* at pp. 632–633.) Third, the parent must show that "terminating that [parental] attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Id.* at p. 636.)

The substantial evidence standard of review applies to the first two prongs of the parental-benefit exception—namely, whether the parent has maintained regular visitation and contact with the child and whether the relationship is such that the child would benefit from continuing it. (*Caden C., supra*, 11 Cal.5th at pp. 639–640.) The third prong of the exception—"whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Id.* at p. 640.)

The juvenile court found Father established the first prong by maintaining regular visitation and contact with H.I. The Agency concedes Father established the first prong, and we agree substantial evidence supports this conclusion. Father regularly visited H.I. twice a week. After

H.I. moved out of state to grandmother's home, Father visited him there and had virtual visitation with him.

Father claims the juvenile court erred in finding the parental-benefit exception did not apply because the record does not contain substantial evidence showing he did not meet his burden as to the second prong. He also asserts the court abused its discretion on the third prong when it found the benefits of adoption would outweigh the detriment to H.I. caused by terminating their relationship.

As to the second prong, "courts assess whether 'the child would benefit from continuing the relationship.'" (*Caden C., supra*, 11 Cal.5th at p. 632.) The focus is on the child, and factors considered are " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Ibid.*)

H.I. lived with Father for the first seven months of his life. When H.I. left Father's care he was too young to have developed a strong emotional attachment to Father or understand the concept of a biological father. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 459, 467 [two-year old child was "very young, too young to understand the concept of a biological parent"].) At the time of the hearing, H.I. had just turned three years old. His visits with Father were playful and affectionate. Father consistently brought food to eat and toys. Father clearly loves H.I., and H.I. appeared to enjoy his visits with Father. The social worker agreed H.I. had a bond and attachment to Father. H.I., however, did not suffer any negative reactions at the end of visits.

Given H.I's age, the short time he spent with Father throughout his life, and the lack of any reported effect on him following visits or when Father missed visits, it is far from clear that Father's interactions rose above

pleasant visits with some emotional connection.  In sum, substantial evidence supports the juvenile court's determination that Father fell short of establishing the second prong of the beneficial relationship exception.

But even assuming for the sake of argument that Father established a beneficial relationship, we cannot find the juvenile court abused its discretion in ultimately concluding that the benefits H.I. would realize from adoption outweighed any harm or detriment he might suffer from the terminating of Father's parental rights.

The juvenile court correctly assumed that terminating Father's parental rights would terminate his relationship with H.I.  (*Caden C., supra*, 11 Cal.5th at p. 633.)  It also recognized terminating Father's relationship could lead to H.I. suffering emotional instability, acting out, anxiety, or depression.  It concluded, however, "a new stable home may alleviate these potential problems providing a new source of stability that could make the loss of a parent at least on balance not detrimental" and "on balance the benefits of adoption outweigh any detriment to termination of parental rights."

Father suggests the court abused its discretion because this conclusion is not supported by the record.  We disagree.  Our review of the record shows H.I. did not have difficultly separating from Father after visits and never became distressed after visits ended or if visits were cancelled.  Nor is there any evidence in the record suggesting Father's refusal to contact or visit H.I. when H.I. first moved out of state to grandmother's city negatively impacted H.I.  When Father visited H.I. there, grandmother reported that H.I. "did not cry" and was "happy to be home" after the visit ended.  The social worker who observed H.I. via video reported H.I. looked happy and comfortable.

13

We cannot say the juvenile court's decision was arbitrary, capricious, or absurd. (*Caden C., supra*, 11 Cal.5th at p. 641.) Accordingly, we conclude the court did not err when it declined to apply the parental-benefit exception to adoption under section 366.26, subdivision (c)(1)(B)(i).[6]

### DISPOSITION

The orders are affirmed.

DO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

KELETY, J.

---

[6] Mother joins Father's arguments but offers no independent basis to find error. Essentially it is her argument that, if the order terminating Father's parental rights is reversed, her rights should be reinstated as well. Since Father did not demonstrate error, Mother has no basis for reversal.